IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SARALYN WASSERMAN<br>c/o 1825 K Street, NW, Suite 750<br>Washington, DC 20006<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL RIGAS, ACTING<br>DIRECTOR OFFICE OF<br>PERSONNEL MANGEMENT<br>1900 E Street NW.,<br>Washington, DC 20415<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Case No.:** _____<br>)<br>)<br>)<br>) |

## CIVIL COMPLAINT FOR RELIEF

Plaintiff Saralyn Wasserman, by and through undersigned counsel, brings this action against the Office of Personnel Management ("OPM") for judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, Mandamus Relief under 28 U.S.C. § 1631, or in the alternative, *de novo* proceedings for violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, based upon the facts and circumstances of her employment with OPM.

### Parties

1. Wasserman is a resident of Virginia and a citizen of the Unites States. Wasserman became an employee of OPM on or about June 27, 2016.

2. OPM is a federal government agency headquartered at 1900 E St Northwest, Washington, DC 20415.

## Jurisdiction and Venue

3. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States of America.

4. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 because OPM has significant and deliberate contacts with this district and because it is where the substantial majority of the events and omissions giving rise to this action occurred.

## Plaintiff Is Entitled to Enforcement of OFO's Order for Defendant to Issue a Corrected Final Agency Decision

5. Wasserman worked for OPM as a probationary employee between June 27, 2016 and her termination on April 6, 2017.

6. Following her termination, Wasserman timely filed an EEO complaint with OPM's EEO office, ultimately requesting a final agency decision ("FAD") on the Report of Investigation generated by the EEO investigation.

7. On August 26, 2020, OPM served Wasserman with its FAD finding that Wasserman had not been subjected to unlawful discrimination or retaliation.

8. OPM's FAD incorrectly informed Wasserman that she had appeal rights at the Merit Systems Protection Board ("MSPB") rather than with OFO.

9. Because Wasserman alleged one count of discriminatory and retaliatory harassment and one count of discriminatory termination and harassment during her probationary period, she did not have MSPB appeal rights.

10. Accordingly, on September 25, 2020, Wasserman appealed the FAD to OFO.

11. On October 8, 2020, OFO issued a *sua sponte* order vacating the FAD and ordering OPM to reissue a FAD that (1) notified Wasserman of her appeal rights to OFO with respect to her harassment claims and (2) clarified Wasserman's appeal rights with respect to her termination given that generally termination during a probationary period is not appealable to MSPB except in the instance that the termination was based on a "pre-employment reason."

12. The order directed OPM to issue the new FAD within thirty days.

13. The order also directed OPM to file compliance reports within seven days of completing the ordered actions.

14. The order informed Wasserman that if OPM did not comply with the order, she had the right to petition OFO for enforcement, file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement, or file a civil action on the underlying complaint.

15. The order informed Wasserman that the deadline for a civil action for enforcement or a civil action on the underlying complaint was set out in 42 U.S.C. 2000e-16(c), which, *inter alia*, provides employees 90 days from the date of receipt of an OFO decision to file a civil action.

16. The order is incorporated into these allegations and attached as Exhibit 1.

17. To-date, OPM has failed to issue a new FAD in compliance with the OFO's order (and has not issued any compliance reports).

**Factual Allegations of the Underlying Complaint**

18. On or about June 27, 2016, Wasserman began working at OPM, Human Resources Solutions ("HRS").

19. Wasserman's first line supervisor was Leslie J. Pollack, Deputy Associate Director.

20. Wasserman's work unit was generally "virtual'" meaning most of the employees telework several days of the week and many days Wasserman was mostly alone in the office.

21. Wasserman was the only Legal Management Analyst in the group and the rest of the employees are Personnel Psychologists.

22. At the time that Wasserman began working at HRS, Wasserman was age fifty-eight.

23. Upon information and belief, most of the employees in Wasserman's group were in their twenties and thirties—making Wasserman the oldest employee in the group.

24. Wasserman's unit also consisted of a clique of five employees, all of whom were in their twenties and thirties that were supervised by Henry Thibodeaux, Branch Manager, Assessment and Evaluation.

25. The group consisted of Matisha Montgomery, Lead Personnel Research Psychologist, and Personnel Research Psychologists, Renee Vincent, Andrea Zappone, Rebecca Fraser, and Sandra Alexander (collectively the "Group").

26. At the beginning of her tenure, Pollack warned Wasserman that this was "a fast paced" environment, insinuating Wasserman was slow because of her age.

27. After Wasserman began, the Group, led by Montgomery, harassed, treated Wasserman as an outsider, ostracized, bullied, and mocked Wasserman.

28. Beginning in or about August 29, 2016, Montgomery, began to express contempt toward Wasserman.

29. Montgomery said "hello" to Wasserman in a disagreeable tone in front of Wasserman's younger colleagues.

30. Montgomery also turned her back towards Wasserman whenever Wasserman approached her.

31. Montgomery lingered for long periods of time at a nearby cubicle to Wasserman and spoke loudly next to Wasserman's cubicle to Fraser and Alexander.

32. Montgomery purposefully spoke loudly and disturbed Wasserman's work and encouraged Fraser and Alexander to do the same.

33. Montgomery also encouraged Vincent and Zappone, both of whom were also younger than Wasserman to isolate her.

34. Upon information and belief, on or about November 11, 2016, Montgomery went to lunch with Pollack.

35. During their meeting, Montgomery spoke poorly of Wasserman to Pollack and told Pollack that she wanted Wasserman fired.

36. On or about November 21, 2016, the OPM/Theodore Roosevelt Building conducted a fire drill during which everyone had to evacuate the building and gather in the park across from the building.

37. OPM protocol directs employees to stay within employees' group and with their group leader during fire drills.

38. Wasserman's group leader was Thibodeaux.

39. During the fire drill, Wasserman stood with Thibodeaux and Karen Kolokowski, Executive Assistant to Leslie Pollack.

40. Despite OPM protocol, the Group stood separately from the group and huddled together.

41. During the fire drill, Montgomery and her colleagues grimaced at Wasserman and covered their mouths while speaking and glaring at Wasserman.

42. Thibodeaux watched as Montgomery and her colleagues openly mocked Wasserman but did not intervene.

43. Later that day, as Wasserman was leaving, Wasserman said to Fraser, "people hate me here, I'm struggling here."

44. In response, Fraser nodded in agreement.

45. On or about November 22, 2016, the day after Thibodeaux watched as Montgomery and the Group mocked Wasserman, Thibodeaux asked Wasserman into his office.

46. During their discussion, Thibodeaux asked Wasserman how she was doing.

47. In response, Wasserman complained about the treatment that she was experiencing from her colleagues.

48. Thibodeaux implied that he recognized there were some problems with communication and responded that he agreed that this was a "rough bunch."

49. Following Wasserman's meeting with Thibodeaux, Montgomery continued to ignore Wasserman whenever Wasserman approached, and spoke to Wasserman is a sneering and condescending tone.

50. Montgomery regularly leaned on the outside of Wasserman's cubicle wall and Wasserman's way.

51. In one instance, Montgomery wouldn't move until Alexander moved her away.

52. This went on regularly before and after the November 21, 2016, fire drill incident.

53. Montgomery's colleagues, Fraser and Alexander also continued to remain cold and distant toward Wasserman following the fire drill incident.

54. On or about February 7, 2017, Pollack issued Wasserman a positive performance rating, which included acceptable marks for each performance element.

55. Pollack also provided Wasserman with general advice about what Wasserman could do to achieve high performance scores.

56. Pollack did not express any issue with Wasserman's performance.

57. Throughout 2016 and until Montgomery's departure in March 2017, Montgomery continued to exhibit the same hostile behavior towards Wasserman.

58. In or about late March 2017, Wasserman overheard Fraser speaking with a male employee in her cubicle.

59. The male employee said, "Is she gone already" after which there was silence after Fraser saw Wasserman.

60. Upon information and belief, Fraser and was talking about Wasserman because Wasserman was the only employee in the office at the time.

61. On or about April 6, 2017, Pollack presented Wasserman with the termination letter letting with an effective termination date of April 14, 2017.

62. The letter gives "inadequate Performance" as reason for the termination during the probationary period.

63. Pollack read the letter but did not provide any other information.

64. This was the first instance that Wasserman was led to believe anything other than that she was doing well.

65. Wasserman was never counseled or reprimanded about her performance or conduct and she was never placed on a performance improvement plan.

66. Throughout Wasserman's tenure, Pollack met with all her direct reports, including Wasserman, about four times a week.

67. During Wasserman and Pollack's meetings, Pollack never expressed dissatisfaction with Wasserman's performance.

68. As a result of OPM's illegal discrimination against Wasserman, she has suffered monetary damages, emotional distress damages, and harm to her professional reputation.

**COUNT I**
**COUNT II**
**(Petition for Mandamus – In the Alternative to the First Count)**
**28 U.S.C. § 1361**

81. Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

82. On or about August 26, 2020, Defendant issued Plaintiff a decision concerning her complaints of unlawful discrimination

83. On or about September 25, 2020, Plaintiff filed an appeal with the OFO.

84. On or about October 8, 2020, the OFO ordered that Defendant, within thirty calendar days of the date of the decision, re-issue a new final decision.

85. On or about November 9, 2020, following thirty calendar days after the OFO issued its decision, Defendant did not re-issue a new final decision.

86. Through present, Defendant has not re-issued a new final decision, despite the OFO's order.

87. Defendant has failed to submit any required report of compliance, which gives Plaintiff the right to file a civil action to seek judicial review of Defendant's refusal to implement

8

the ordered relief pursuant to the mandamus statute, 28 U.S.C. § 1361, and 29 C.F.R. § 1614.503 (g).

88. Defendant has a plainly defined and peremptory duty to do the act in question because on or about October 8, 2020, the OFO ordered that Defendant, within thirty calendar days of the date of the decision, re-issue a new final decision.

89. There is no other adequate remedy available to compel Defendant to act according to the OFO's order.

90. Defendants' actions, or lack thereof, warrant relief under 28 U.S.C. § 1361.

## COUNT III
### (Age Discrimination in Employment Act of 1967 - Discrimination)
### 29 U.S.C. § 623(a)
### (In the Alternative to the First and Second Count)

91. Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

92. Plaintiff is an "employee" as defined by 29 U.S.C § 630(f).

93. Defendant is an "employer" as defined by 29 U.S.C. § 630 (b).

94. Plaintiff is a member of a protected class because she is fifty-eight years of age.

95. Plaintiff suffered an adverse employment action when Defendant subjected Plaintiff to a hostile work environment.

96. Plaintiff suffered an adverse employment action when on or about April 6, 2017, Defendant terminated Plaintiff.

97. The unfavorable action gives rise to an inference of discrimination because similarly situated employees outside of Plaintiff's protected class, namely, the members of the Group were treated more favorably by Defendant.

98. Defendant's stated and forthcoming legitimate reasons for these actions are mere pretext for its discriminatory actions.

99. As a result of Defendant's discrimination against Plaintiff, Plaintiff has suffered monetary damages, emotional distress damages, and harm to her professional reputation.

## COUNT IV
### (Age Discrimination in Employment Act of 1967 - Retaliation)
### 29 U.S.C. § 623(a)
### (In the Alternative to the First and Second Count)

100. Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

101. Plaintiff is an "employee" as defined by 29 U.S.C § 630(f).

102. Defendant is an "employer" as defined by 29 U.S.C. § 630 (b).

103. Plaintiff engaged in activity protected by the ADEA when on or about November 22, 2016, Plaintiff complained about the harassment that she was experiencing from the Group.

104. Plaintiff suffered an adverse employment action when Defendant subjected Plaintiff to a hostile work environment.

105. Plaintiff suffered an adverse employment action when on or about April 6, 2017, Defendant terminated Plaintiff.

106. The adverse action was causally related to the exercise of her rights under the ADEA based on the close, five-month, temporal proximity between Plaintiff's protected activity and the adverse action.

107. Defendant's stated and forthcoming legitimate reasons for these actions are mere pretext for its discriminatory actions.

108. As a result of Defendant's discrimination against Plaintiff, Plaintiff has suffered monetary damages, emotional distress damages, and harm to her professional reputation.

## COUNT V
### (Title VII of the Civil Rights Act of 1964 - Discrimination)
### 42 U.S.C. §§ 2000e *et seq*.
### (In the Alternative to the First and Second Count)

109.  Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

110.  Plaintiff is an "employee" as defined by 42 U.S.C. § 2000e(f).

111.  Defendant is an "employer" as defined by 42 U.S.C. § 2000e(b).

112.  Plaintiff is a member of a protected class because she is a woman.

113.  Plaintiff suffered an adverse employment action when Defendant subjected Plaintiff to a hostile work environment.

114.  Plaintiff suffered an adverse employment action when on or about April 6, 2017, Defendant terminated Plaintiff.

115.  The unfavorable action gives rise to an inference of discrimination because similarly situated employees outside of Plaintiff's protected class, namely, the members of the Group were treated more favorably by Defendant.

116.  Defendant's stated legitimate reasons for these actions are mere pretext for its discriminatory actions.

117.  As a result of Defendant's discrimination against Plaintiff, Plaintiff has suffered monetary damages, emotional distress damages, and harm to her professional reputation.

## COUNT VI
### (Title VII of the Civil Rights Act of 1964 - Retaliation)
### 42 U.S.C. §§ 2000e *et seq*.
### (In the Alternative to the First and Second Count)

118.  Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

119. Plaintiff is an "employee" as defined by 42 U.S.C. § 2000e(f).

120. Defendant is an "employer" as defined by 42 U.S.C. § 2000e(b).

121. Plaintiff engaged in activity protected by Title VII when on or about November 22, 2016, Plaintiff complained about the harassment that she was experiencing from the Group.

122. Plaintiff suffered an adverse employment action when Defendant subjected Plaintiff to a hostile work environment.

123. Plaintiff suffered an adverse employment action when on or about April 6, 2017, Defendant terminated Plaintiff.

124. The adverse action was causally related to the exercise of her rights under Title VII based on the close, five-month, temporal proximity between Plaintiff's protected activity and the adverse action.

125. Defendant's stated and forthcoming legitimate reasons for these actions are mere pretext for its discriminatory actions.

126. As a result of Defendant's discrimination against Plaintiff, Plaintiff has suffered monetary damages, emotional distress damages, and harm to her professional reputation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court award Plaintiff declaratory and injunctive relief ordering Defendant to issue a corrected FAD in accordance with OFO's October 8, 2020 order, reasonable attorneys' fees and costs, and any further relief the Court finds just.

In the event the Court does not grant Plaintiff declaratory and injunctive relief ordering Defendant to issue a corrected FAD, Plaintiff seeks in the alternative the following relief on her

underlying complaint of discrimination and harassment:

    a.  Front pay;

    b.  Back Pay;

    c.  Compensatory damages;

    d.  Reasonable attorney's fees and litigation costs;

    e.  Tax on any award;

    f.  Any other relief as the Court deems fair and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all Counts contained in the Complaint.

Dated: January 6, 2021

Respectfully submitted,

/s/Alan Lescht
Alan Lescht, Esq. (441691)
Alan Lescht & Associates
1825 K Street NW, Suite 750
Washington DC, 20006
T: (202) 315-1741
F: (202) 463-6067
alan.lecht@leschtlaw.com
*Attorney for Plaintiff*

# EXHIBIT 1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Saralyn Wasserman, a/k/a
Cecille W,[1]
Complainant,

v.

Michael Rigas,
Acting Director,
Office of Personnel Management,
Agency.

Appeal No. 2020005432

Agency No. 2017024

DECISION

Complainant filed a timely appeal with the Equal Employment Opportunity Commission (EEOC or Commission) from the Agency's decision dated August 13, 2020, concerning her complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Management Analyst at the Agency's facility in Washington, D.C.

On May 30, 2017, Complainant filed a formal complaint alleging that she was discriminated against on the bases of sex (female), age, and reprisal when:

1. she was subjected to discriminatory harassment (non-sexual) by her co-workers from June 27, 2016, to April 14, 2017; and

2. effective April 14, 2017, she was terminated from her position during her probationary period.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2                                                                    2020005432

The Agency accepted the complaint for investigation. Following the investigation, Complainant requested a hearing, but subsequently withdrew her request. The Agency issued its final decision finding no discrimination on either claim, giving Complainant appeal rights to the Merits Systems Protection Board (MSPB), not the EEOC. Complainant filed the instant appeal.

ANALYSIS AND FINDINGS

As an initial matter, 5 C.F.R § 1201.3(a) sets forth matters which fall under the MSPB's appellate jurisdiction. We note that claims of harassment are not identified, and as such are not appropriate for appeal to the MSPB. As such, the Agency should have provided Complainant with appeal rights to this Commission on its final decision concerning her ongoing discriminatory harassment claim (claim 1).

As to Complainant's termination claim (claim 2), the matter is not clear. According to 5 C.F.R § 1201.3(a)(1) appealable matters include terminations "after completion of probationary or other initial service period…" However, 5 C.F.R § 1201.3(a)(3) states that where there is a termination of probationary employment, "appealable issues are limited to a determination that the termination was…based on a pre-employment reason." Thus, it is not clear if the termination at issue in this case was actually appealable to the MSPB as well.

Accordingly, we are remanding the complaint for issuance of a new decision with appropriate appeal rights.  The Agency's final decision is VACATED and the matter REMANDED to the Agency for further action as set forth below.

ORDER

Within thirty (30) calendar days of the date of this decision, the Agency shall re-issue a new final decision on this complaint with appropriate appeal rights. Claim 1 is appealable to the EEOC. On Claim 2, the Agency should seek legal advice on whether Complainant should be provided appeal rights to EEOC or the MSPB given the information set forth in 5 C.F.R § 1201.3(a) et seq.

IMPLEMENTATION OF THE COMMISSION'S DECISION (K0719)

Under 29 C.F.R. § 1614.405(c) and § 1614.502, compliance with the Commission's corrective action is mandatory.  Within seven (7) calendar days of the completion of each ordered corrective action, the Agency shall submit via the Federal Sector EEO Portal (FedSEP) supporting documents in the digital format required by the Commission, referencing the compliance docket number under which compliance was being monitored.  Once all compliance is complete, the Agency shall submit via FedSEP a final compliance report in the digital format required by the Commission. See 29 C.F.R. § 1614.403(g).  The Agency's final report must contain supporting documentation when previously not uploaded, and the Agency must send a copy of all submissions to the Complainant and his/her representative.

If the Agency does not comply with the Commission's order, the Complainant may petition the Commission for enforcement of the order.  29 C.F.R. § 1614.503(a).

3                                                                           2020005432

The Complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement.  See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g).  Alternatively, the Complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File a Civil Action."  29 C.F.R. §§ 1614.407 and 1614.408.  A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999).  **If the Complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated**.  See 29 C.F.R. § 1614.409.

Failure by an agency to either file a compliance report or implement any of the orders set forth in this decision, without good cause shown, may result in the referral of this matter to the Office of Special Counsel pursuant to 29 C.F.R. § 1614.503(f) for enforcement by that agency.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0620)

The Commission may, in its discretion, reconsider this appellate decision if the complainant or the agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision.  If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**.  A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition.  See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx.

Alternatively, complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507.  In the absence of a legible postmark, complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period.  See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP).  See 29 C.F.R. § 1614.403(g).

Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

**Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request.** Any supporting documentation must be submitted together with the request for reconsideration. **The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances.** See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0610)

This is a decision requiring the Agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. In the alternative, you may file a civil action **after one hundred and eighty (180) calendar days** of the date you filed your complaint with the Agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. **Filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

*/s/ Carlton M. Hadden*
Carlton M. Hadden, Director
Office of Federal Operations

October 8, 2020
Date