**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SARALYN WASSERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 21-0026 (ABJ) |
| | ) |
| KIRAN AHUJA, | ) |
| Director, Office of | ) |
| Personnel Management, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

On January 6, 2021, plaintiff Saralyn Wasserman brought this action against her former employer, the Office of Personnel Management ("OPM"), and Michael J. Rigas, the Acting Director of OPM.  Compl. [Dkt. # 1-1]; *see also* Am. Compl. [Dkt. # 12] (amending complaint on June 23, 2021).[1]  She alleges that OPM discriminated and retaliated against her on the basis of her age and her sex, leading up to and resulting in her termination.  Am. Compl. ¶¶ 73–108.  The amended complaint consists of four counts:

---

1       The current OPM Director, Kiran Ahuja, was automatically substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

Plaintiff's original complaint listed Michael Rigas as the singular defendant in the case caption, *see* Compl. at 1, but went on to refer to "OPM" as the defendant in the case.  Compl. ¶ 2. Then, plaintiff's amended complaint listed OPM as the singular "[d]efendant" in the case caption, Am. Compl. at 1, and also only referred to the agency as the defendant throughout the rest of the amended complaint.  Because the issues in this case would not change even if only one – or both – of these defendants were named, the Court will treat the pending motion to dismiss plaintiff's complaint as dispositive of the claims in this case against either OPM's director or the agency itself.

- Count I alleges age discrimination and a hostile work environment in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a), Am. Compl. ¶¶ 73–81.

- Count II alleges retaliation and a hostile work environment in violation of the ADEA, Am. Compl. ¶¶ 82–90.

- Count III alleges sex discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, Am. Compl. ¶¶ 91–99.

- Count IV alleges retaliation and a hostile work environment in violation of Title VII, Am. Compl. ¶¶ 100–08.

Defendant has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the bulk of the counts in the complaint: the hostile work environment discrimination claims in Counts I and III; the retaliatory hostile work environment claims in Counts II and IV; the retaliation claims in Counts II and IV; and the sex discrimination claim in Count III. Def.'s Mot. to Dismiss Pl.'s Compl., In Part [Dkt. # 13], Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss [Dkt. # 13-2] ("Def.'s Mot."). The portion of Count I that alleges age discrimination in connection with plaintiff's termination is not challenged in this motion. Def.'s Mot. at 1 n.1. The motion is fully briefed.[2]

For the reasons to be set forth in more detail below, defendant's partial motion to dismiss will be **GRANTED**. But the age discrimination claim will move forward.

## FACTUAL BACKGROUND

On June 27, 2016, plaintiff, then a fifty-eight-year-old woman, began working for OPM. Am. Compl. ¶¶ 1, 18, 22. She was hired to work within the Human Resource Solutions ("HRS") department as a "Legal Management Analyst," and was supervised by an individual named Leslie

---

2    *See* Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 15] ("Pl.'s Opp."); Def.'s Reply in Supp. of Def.'s Mot. to Dismiss [Dkt. # 16] ("Def.'s Reply").

Pollack, the Deputy Associate Director.  Am. Compl. ¶¶ 18–19, 21.  She remained a probationary employee during her entire tenure at OPM.  Am. Compl. ¶ 5.  Plaintiff's work unit was "generally virtual[,] meaning most of the employees teleworked several days of the week and many days [plaintiff] was mostly alone in the office."  Am. Compl. ¶ 20 (internal quotation marks omitted).  Plaintiff alleges that Pollack warned her shortly after she came onboard that the office was "'a fast paced' environment," which plaintiff says she interpreted at that time as an insinuation that she "was slow because of her age."  Am. Compl. ¶ 26.

Plaintiff's unit included Matisha Montgomery, a Lead Personnel Research Psychologist, and four Personnel Research Psychologists, Renee Vincent, Andrea Zappone, Rebecca Fraser, and Sandra Alexander.[3]  Am. Compl. ¶¶ 24–25.  Henry Thibodeaux, the Branch Manager, supervised these individuals.  Am. Compl. ¶ 24.  Plaintiff states that most of the employees in her work unit were in their twenties and thirties, and that she was the oldest employee among them.  Am. Compl. ¶ 23.

Plaintiff alleges that, starting on August 29, 2016, Montgomery began treating her with contempt.  Am. Compl. ¶ 28.  She claims that Montgomery:  said "hello" to her in a disagreeable tone in front of her "younger colleagues;" turned her back whenever plaintiff approached; lingered near her cubicle for long periods of time; spoke loudly in an effort to disturb her and instructed other members of the Group to do the same; encouraged other employees to isolate her; and occasionally positioned herself to block plaintiff's way.  Am. Compl. ¶¶ 29–33, 54.  In sum, plaintiff claims that "the Group, led by Montgomery, harassed, [] ostracized, bullied and mocked [her], and treated her as an outsider."  Am. Compl. ¶ 27.  According to the complaint, the members

---

3       Montgomery, Vincent, Zappone, Fraser, and Alexander are collectively referred to by the plaintiff as the "Group."  Am. Compl. ¶ 25.

of the group did not treat any male colleagues in this manner; they treated male, GS-14 employees, including Jaron Holmes, Matthew Sigafoose, Anthony Bayless, Mike Rossi, Steven Burnkrant, and Charles Thompson, "more favorably."  Am. Compl. ¶¶ 34–35.

Plaintiff alleges that on November 11, 2016, Montgomery had lunch with her supervisor, Leslie Pollack.  Am. Compl. ¶ 36.  At that time, according to the complaint, Montgomery "spoke poorly of Wasserman . . . and told Pollack that she wanted Wasserman fired."  Am. Compl. ¶¶ 36–37.

Plaintiff also claims that during a fire drill on November 21, 2016, she stood with the Group's supervisor, Thibodeaux, and Pollack's Executive Assistant, Karen Kolokowski, while the Group stood separately and "huddled together," which was against OPM protocol.  Am. Compl. ¶¶ 38, 41–42.  Plaintiff complains that Thibodeaux watched while the Group "grimaced at Wasserman and covered their mouths while speaking and glaring at [her]," and "openly and blatantly mocked" her, but he "did not intervene."  Am. Compl. ¶¶ 43–44.  Plaintiff asserts that later that day, she told one of the Group members, Fraser, that she believed "people hate[d]" her and that she was "struggling," and Fraser nodded in agreement.  Am. Compl. ¶¶ 45–46.

According to plaintiff, on November 22, 2016, the day after the fire drill, Thibodeaux asked her to come into his office.  Am. Compl. ¶ 47.  Plaintiff states that during the meeting, she complained about the way she was being treated by her colleagues.  Am. Compl. ¶ 49.  According to plaintiff, "Thibodeaux implied that he recognized there were some problems with communication and . . . agreed that [the Group] was a 'rough bunch.'"  Am. Compl. ¶ 50.

Plaintiff alleges, upon information and belief, that Thibodeaux conveyed her complaints to Pollack.  Am. Compl. ¶ 52.  Shortly after that conversation, Pollack asked plaintiff to work together with Montgomery for the first time and required his assistant, Kolokowski, to remain with them

during their first meeting.  Am. Compl. ¶ 53.  Pollack was allegedly present at the beginning of the meeting and commented that plaintiff and Montgomery had "turned a corner."  Am. Compl. ¶ 53.  But according to the complaint, the "negative interactions" continued.  Am. Compl. ¶ 54.  For example, plaintiff reports:  "Montgomery continued to ignore [her] whenever [she] approached [] and spoke to [her] in a sneering and condescending tone,"  Am. Compl. ¶ 51; "Montgomery regularly leaned on the outside of Wasserman's cubicle wall and physically got in Wasserman's way,"  Am. Compl. ¶ 54; in one instance, "Montgomery wouldn't move until Alexander moved her away,"  Am. Compl. ¶ 55; and Group members "Fraser and Alexander . . . continued to remain cold and distant."  Am. Compl. ¶ 57.  And, she claims, "[t]hroughout 2016, and until Montgomery's departure in March 2017, Montgomery continued to exhibit the same hostile behavior" towards her.  Am. Compl. ¶ 61.

On February 7, 2017, Pollack gave plaintiff a positive performance review with acceptable marks for each performance element and did not include any negative comments.  Am. Compl. ¶¶ 58–60.  According to plaintiff, Pollack met with her about four times a week throughout her entire tenure and never expressed dissatisfaction with her performance during those meetings. Am. Compl. ¶¶ 70–71.

But plaintiff's coworkers were less supportive.  Plaintiff alleges that in approximately late March of 2017, she overheard a male employee asking Fraser, "Is she gone already?"  But the two "immediately became silent" when they saw she was nearby.  Am. Compl. ¶¶ 62–63.  Since she was the only other employee in the office at the time, plaintiff posits that the two were talking about her.  Am. Compl. ¶ 64.

Finally, the complaint alleges that Pollack presented plaintiff with a termination letter on April 6, 2017, with an effective termination date of April 14, 2017.  Am. Compl. ¶ 65; *see also*

Am. Compl. ¶ 5.  According to plaintiff, the letter listed plaintiff's "inadequate [p]erformance" during her probationary period as the reason for her termination, and Pollack did not provide her with additional details as to why she was being let go.  Am. Compl. ¶¶ 66–67.  Plaintiff alleges that the termination letter was the first time management ever expressed to her that her performance was "anything other than satisfactory."  Am. Compl. ¶ 68.  She claims that she had never previously been counseled or reprimanded about her performance or conduct at OPM.  Am. Compl. ¶ 69.

Following her termination, plaintiff filed an Equal Employment Opportunity ("EEO") complaint with OPM on May 30, 2017.  *See* Off. of Fed. Operations Ord., Ex. 1. to Compl. [Dkt. # 1-1] ("OFO Order") at 1.[4]  On August 26, 2020, OPM issued a decision denying plaintiff's discrimination and retaliation claims.  Am. Compl. ¶ 7.[5]

---

[4]     In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).   The complaint expressly incorporates the OFO Order.  *See* Compl. ¶ 16; Am. Compl. ¶¶ 6–7 (referencing, but not attaching the OFO Order).

[5]     Plaintiff alleges that in OPM's initial decision, finding that she "had not been subjected to unlawful discrimination or retaliation," Am. Compl. ¶ 7, the agency incorrectly informed her that she had the right to appeal OPM's decision to the Merit Systems Protection Board ("MSPB"). Am. Compl. ¶ 8.   However, because plaintiff's claims involved discriminatory and retaliatory harassment during her probationary period, plaintiff alleges that she actually had appeal rights to the Equal Employment Opportunity Commission's Office of Federal Operations ("OFO"), and not to the MSPB.  Am. Compl. ¶¶ 8–9.

   Plaintiff alleges that, on September 25, 2020, she appealed OPM's decision to OFO.  Am. Compl. ¶ 10.  On October 8, 2020, OFO issued an order vacating OPM's decision, and ordered OPM to reissue a final agency decision that correctly identified her appeal rights. Am. Compl. ¶ 11.  On February 25, 2021, OPM issued a revised final agency decision which again denied plaintiff's discrimination and retaliation claims.  *See* Am. Compl. ¶ 17; OPM Final Agency Decision, Ex. B to Def.'s Mot. [Dkt. # 8-4].

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## ANALYSIS

### I.      Hostile Work Environment Discrimination Claims (portions of Counts I and III)

Defendant argues that plaintiff's hostile work environment discrimination claims should be dismissed because plaintiff has not met "the demanding standard for establishing a hostile work environment that would violate" the ADEA or Title VII.  Def.'s Mot. at 13.

To prevail on a hostile work environment discrimination claim under the ADEA or Title VII, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008), quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In determining whether a hostile work environment exists, courts "look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), quoting *Harris*, 510 U.S. at 23; *see also Baloch*, 550 F.3d at 1201. "Severity and pervasiveness are complementary factors and often go hand-in-hand, but a hostile work environment claim could be satisfied with one or the other."  *Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014).

The Supreme Court has made clear that the conduct must be so extreme "to amount to a change in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  This "ensure[s] that Title VII does not become a general civility code" that would involve the courts in policing "the ordinary tribulations of the workplace."  *Id.* (internal quotation marks omitted); *see also Singleton v. Potter*, 402 F. Supp. 2d 12, 41 (D.D.C. 2005)

(noting that definition of a hostile work environment is circumscribed to ensure that "the ADEA, like Title VII," does not become a general civility code).  The allegedly harassing environment must be "both objectively and subjectively offensive, [and] one that a reasonable person would find hostile or abusive." *Faragher*, 524 U.S. at 787; *see Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018), quoting *Harris*, 510 U.S. at 21–22.

Of particular importance here, a plaintiff must show that "the conduct at issue was not merely tinged with offensive . . . connotations, but actually constituted discrimination . . . because of" the employee's protected status. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted); *Baloch*, 550 F.3d at 1201 (finding that there was no Title VII hostile work environment, in part because "none of the comments or actions directed at [plaintiff] expressly focused on his race, religion, age, or disability"); *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002) (discrimination laws do not prohibit all forms of workplace harassment, only harassment based on a person's protected status).

Plaintiff describes a set of adult "mean girls" acting as if they were still in middle school, and their barbs were apparently quite painful to endure.  But boorish or immature behavior is not the focus of Title VII or the ADEA.[6]  First, even accepting plaintiff's characterizations of the

---

[6]     Plaintiff also claims that OPM is liable for the hostile work environment – even though these alleged actions came from specific employees – under the theory that her supervisors were "negligent in not preventing or correcting the harassment."  *See* Pl.'s Opp. at 4–5, citing *Ashraf-Hassan v. Embassy of Fr. in U.S.*, 999 F. Supp. 2d 106, 116 (D.D.C. 2013).  However, this vicarious liability theory is only actionable if the complaint adequately states an underlying hostile work environment claim.  *See Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015) ("[I]f certain conduct would not dissuade a reasonable worker from making or supporting a charge of discrimination, neither would an employer's failure to investigate that conduct.") (internal quotation marks and citation omitted).  Thus, because the Court finds that plaintiff has not stated a claim for a hostile work environment, there is no need to determine whether OPM would be liable for the actions of plaintiff's coworkers.

events as true, her claims about her coworkers' tone and volume, as well as their non-verbal conduct, do not amount to plausible allegations of statements or actions "focused on" her age or sex in any way, much less that the offensive conduct occurred "because of" her sex or age. *Baloch*, 550 F.3d at 1201; *see Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 849 (D.C. Cir. 2001) (finding that a supervisor's "nasty attitude" toward his employee was insufficient to establish a hostile work environment); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 172, 193–94 (D.D.C. 2012) (internal quotation marks omitted) (plaintiff's claims that her supervisor "isolate[ed] her, exclude[ed] her from meetings, bec[ame] hostile when [plaintiff] made a comment, . . . scream[ed] at her, and regularly threaten[ed] to write up [plaintiff]" were insufficient to sustain her hostile work environment claim in the absence of any allegations that indicated they were made due to her protected status).

Second, plaintiff's allegations that her coworkers sneered, grimaced, mocked, and isolated her, Am. Compl. ¶¶ 33, 43–44, 51, 57, do not paint a picture of "discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (internal quotation marks omitted). The allegations do not add up to a severe disruption of plaintiff's working conditions. For example, while the Court can understand why plaintiff was upset by her coworkers acting "cold and distant," Am. Compl. ¶¶ 43–44, or isolating her, Am. Compl. ¶¶ 33, 57, these behaviors fall well within the category of "ordinary tribulations of the workplace." *Faragher*, 524 U.S. at 788; *see also Baloch*, 550 F.3d at 1201.[7]

---

[7]    Plaintiff's conclusory allegation that her coworkers subjected her to "severe or pervasive" conduct, *Baloch*, 550 F.3d at 1201, is also undercut by her allegation that her "work unit was generally 'virtual' . . . and many days Wasserman was mostly alone in the office."  Am. Compl. ¶ 20.

Accordingly, the portions of Counts I and III alleging a discriminatory hostile work environment will be dismissed.

## II.    Retaliatory Hostile Work Environment (portions of Counts II and IV)

"A plaintiff may bring a special type of retaliation claim based on a hostile work environment by alleging a series of individual acts that may not be actionable on their own but become actionable due to their cumulative effect." *Menoken v. Dhillon*, 975 F.3d 1, 6 (D.C. Cir. 2020) (internal quotation marks and alterations omitted). The series of individual acts must be "adequately linked such that they form a coherent hostile environment claim, and of such severity or pervasiveness as to alter the conditions of employment and create an abusive working environment." *Id.* (internal quotation marks and alterations omitted). And when assessing whether the acts were severe and pervasive enough, as when determining whether a discriminatory hostile work environment exists, a court should consider "the frequency of the . . . conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*, citing *Harris*, 510 U.S. at 23 (internal quotation marks omitted).

The Court has already determined that plaintiff has failed to clear this bar and plausibly allege behavior that was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive working environment. And plaintiff points to no facts that would support an inference that this was retaliatory behavior; there is no allegation that the behavior began or worsened after plaintiff's alleged protected activity, or that her complaint was ever explicitly mentioned to her coworkers. Therefore, the Court will also dismiss the portions of Counts II and IV that allege a retaliatory hostile work environment.

11

### III.    Retaliation Under Title VII and the ADEA (Counts II and IV)

Defendant argues that plaintiff has not properly stated a claim for retaliation under Title VII because she did not establish that "she opposed a practice made unlawful" by complaining to management about the behavior she was experiencing in the workplace.  Def.'s Mot. at 9–11; *see* Am. Compl. ¶¶ 47–49.  Defendant also argues that plaintiff's retaliation claims under both Title VII and the ADEA fail because plaintiff had not shown that her termination is causally linked to her complaint to management.  Def.'s Mot. at 11–13.

"Both Title VII and the ADEA prohibit the federal government from retaliating against employees who complain of employment discrimination." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009), citing *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (Title VII); *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (ADEA).

Anti-retaliation provisions under the ADEA and Title VII make it unlawful for "an employer [to] 'discriminat[e] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII [or the ADEA] or 'made a charge, testified, assisted, or participated in' a Title VII [or ADEA] proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (Title VII), quoting 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d) (ADEA); *see also Tomasello v. Rubin*, 167 F.3d 612, 619 (D.C. Cir. 1999) ("[T]he test for determining retaliation under the ADEA and Title VII is identical.").  These provisions apply to federal employers.  *See Baird*, 792 F.3d at 168 n.1 (D.C. Cir. 2015) (confirming that the general ban on retaliation in section 2000e–3(a) applies to federal employers by virtue of section 2000e–16); *Gomez–Perez*, 553 U.S. at 489 (recognizing that the ADEA prohibits retaliation against federal-sector employees under 29 U.S.C. § 633a).

In order to establish a prima facie case of retaliation, plaintiff "must show:  (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two."  *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003). However, a "plaintiff alleging retaliation faces a low hurdle at the motion to dismiss stage," *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010), citing *Rochon v. Gonzales*, 438 F.3d 1211, 1219–20 (D.C. Cir. 2006), and does not need to plead each element of her prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

The D.C. Circuit has explained that when a plaintiff is alleging retaliation in response to "protected activity," "[n]ot every complaint garners its author protection under Title VII.  While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (internal citations omitted) (noting that plaintiff's memorandum may not be protected activity since it did not allege that "she was currently being discriminated against or that she was being retaliated against for her previous lawsuit").

Here, plaintiff claims she engaged in protected activity when she complained about the harassment from the Group in her meeting with Thibodeaux on November 22, 2016.  Am. Compl. ¶¶ 85, 103; *see* Am. Compl. ¶ 47–50.  However plaintiff simply alleges that during that meeting, she "complained about the treatment that she was experiencing from her colleagues." Am. Compl. ¶ 49.  The complaint does not state or even suggest that she "in some way allege[d] unlawful discrimination" on the basis of her sex or her age during this meeting or at any other point. *Broderick*, 437 F.3d at 1232.  Indeed, according to the complaint, Thibodeaux's alleged reply to plaintiff's concerns was to agree that the Group was a "rough bunch," and that there were "some problems with communication."  Am.  Compl. ¶ 50.  This reply does not create any

inference that management understood plaintiff to be communicating a discrimination claim or to be addressing anything other than her frustrations and communication problems with her coworkers.

Thus, because plaintiff has failed to assert that she engaged in protected activity, the Court will dismiss the remaining portions of Counts II and IV that allege retaliation in violation of Title VII and the ADEA.

## IV.    Sex Discrimination (Count III)

Defendant argues that Count III, plaintiff's sex discrimination claim under Title VII, should be dismissed because plaintiff "has failed to plausibly establish that her termination was in any way related to her sex."  Def.'s Mot. at 6.

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1).  Assuming that plaintiff intended to bring a claim of sex discrimination based on her disparate treatment, she had to allege that (1) that she suffered an adverse employment action[8] (2) because of her protected status.  *See Baloch*, 550 F.3d at 1196. Because the motion is decided based on the face of the complaint, "an employment discrimination plaintiff need not anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action nor allege pretext to survive a motion to dismiss." *Easaw v. Newport*, 253 F. Supp. 3d 22, 26–27 (D.D.C. 2017).  Plaintiff need

---

8      An adverse employment action requires a "tangible employment action," meaning "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

only allege facts supporting an inference that she "suffered an adverse employment action . . . because of [her protected status]." *Baloch*, 550 F.3d at 1196. But "a formulaic recitation of the elements of a cause of action will not do," *Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014), quoting *Twombly*, 550 U.S. at 555, and plaintiff must identify factual allegations that at least show a "nexus between defendants' alleged discriminatory motive and the adverse action." *Easaw*, 253 F. Supp. 3d at 30.

Here, the parties do not dispute that plaintiff – a woman – was a member of a protected class. *See* Am. Compl. ¶ 94. And plaintiff has alleged that she suffered an adverse employment action when defendant fired her.[9] Am. Compl. ¶ 96. But there are no allegations in the complaint that support a reasonable inference that she was fired because of her sex.

The complaint alleges that "because similarly situated employees outside of [her] protected class . . . were treated more favorably by [d]efendant and the Group," there is "an inference of discrimination." Am. Compl. ¶ 97 (naming six male GS-14 employees who were "treated more favorably by the Group"). But none of the discriminatory conduct plaintiff alleges she received from her female coworkers, the members of the Group, can be interpreted, even generously, as having been directed at plaintiff because of her sex.

Thus, the Court is compelled to conclude that the complaint fails to meet the relatively modest requirements of *Iqbal* and *Twombly*: even if one takes every word of the pleading as true, there is nothing there that would support a plausible inference that she was the victim of

---

9      Plaintiff also alleges she suffered an adverse employment action because defendant subjected her to a hostile work environment. Am. Compl. ¶ 95. However, because plaintiff has failed to allege any conduct that was "severe or pervasive" so as to constitute a hostile work environment under the ADEA or Title VII, these allegations cannot sustain her Title VII discrimination claim.

discrimination based on her sex.  Because plaintiff has not pled sufficient facts to "nudge[]" her claim for race discrimination and wrongful termination "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court will dismiss Count III.

## CONCLUSION

For the foregoing reasons, defendant's partial motion to dismiss will be **GRANTED**.  The hostile work environment claims contained in Counts I through IV will be dismissed.  The counts alleging retaliation – Counts II and IV – will be dismissed in their entirety.  Count III, plaintiff's Title VII sex discrimination claim, will also be dismissed in its entirety.

The only remaining claim is the portion of Count I pertaining to plaintiff's allegations of age discrimination with respect to her termination under the ADEA, and that will move forward.

A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  January 11, 2023

16